ORIGINAL

①
6-6-00
SC

Mr. Brian Douglas                          IN PROPRIA PERSONA
Inmate I.D. No. DP-1285
P.O. Box 200
Camp Hill, PA 17001-200        1 : CV00-0982

IN THE
UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BRIAN DOUGLAS,                    :        COMPLAINT
        Plaintiff,                :                    RECEIVED
                                  :                    SCRANTON
        vs                        :
                                  :        MAY 3 0 2000
MARTIN F. HORN; WILLIAM F.        :
WARD; KENNETH D. KYLER; ROBERT    :        _____
STODGEL; MARTIN L. DRAGOVICH;     :        PER _____ DEPUTY CLERK
JOHN ANDREDE; ROBERT BITNER;      :        CIVIL ACTION NO.
CARL HAMBERGER; JOHN BENNING;     :
DOMINIK SUCIC; DWAYNE ROMAN;      :        _____
SERGEANT BEKELY; TERESA LAW;      :                    FILED
DR. LANSKY; TODD YODLEMAN;        :                    SCRANTON
SERGEANT LUCAS; JED MINAYA;       :
LIZHU ZHONG; ROBERT GIMBLE;       :        JUN 02 2000
JOHN DENSHAM; AND SAM GAULT,      :        _____
        Defendants.               :        JURY TRIAL DEMANDED PER
                                           DEPUTY CLERK

Preliminary Statement

    This is a civil rights action filed by Plaintiff, Brian
Dougals, a military veteran/state inmate who suffers from
alcohol/drug addiction, traumatic brain injury (TBI), post
traumatic stress disorder (PTSD), heart disease (Asina), and
severe bone loss (Periodontal Disease). These impairments
qualify Plaintiff as an inmate with a disability under the
provisions of the American with Disabilities Act. Plaintiff also
has a disability which limits his understanding of legal
material.

    Plaintiff alleges denial of access to the courts,

discrimination based on his disabilities, his race, and the nature of his crime. Plaintiff also alleges denial of adequate medical care, dental services, employment, vocational and educational programs. Plaintiff will also be raising a personal injury (tort) claim.

This civil rights suit seeks to redress the deprivation, under color of state law, of rights secured under the constitution of the United States. Plaintiff will allege, show and prove that the actions of the Defendants violated his: (1) fifth amendment right against self-incrimination; (2) eighth amendment right to be free from cruel and unusual punishment; and (3) fourteenth amendment right to due process of law and equal protection.

Plaintiff is a Black, African-American, male, considered to be a minority and all of the Defendants in this action are caucasian with the exception of one.

At this present time, Plaintiff is nine months over his minimum sentence and is scheduled to see the parole board in August of 2000.

Plaintiff seeks a temporary restraining order, injunctive relief, compensatory and punitive damages, under 42 U.S.C. § 1983 and 29 U.S.C. § 794.

## Jurisdiction

1. This Court has jurisdiction over Plaintiff's claims of violation of his Federal constitutional rights under 42 U.S.C. §§ 1331(A), 1343 and 42 U.S.C. § 12101-12132.

2. This Court has supplemental jurisdiction over

Plaintiff's state law tort claims pursuant to 28 U.S.C. § 1367, and Plaintiff invokes this Court's pendent jurisdiction.

Parties

3.  Plaintiff, Brian Dougals, was and still is serving a two and one-half to ten year sentence at the State Correctional Institution Camp Hill (SCIC) during the events described in this complaint.

4.  Defendant, Martin F. Horn, is the Secretary for the Pennsylvania Department of Corrections. He is legally responsible for the overall operations of each prison under his jurisdiction.

5.  Defendant, William F. Ward, is the Chairman for the Pennsylvania Board of Probation and Parole. He and his staff are legally responsible for fixing the term and conditions for inmates release on parole.

6.  Defendant, Kenneth D. Kyler, was the previous Superintendent for SCIC. He was legally responsible for the operations at SCIC and the welfare of all inmates at the prison until January 2000.

7.  Defendant, Martin Drogovich, is the Superintendent for SCIC. He is legally responsible for the operations of SCIC and the welfare of all inmates at this prison after January 2000.

8.  Defendant, John Andrede, is the hearing examiner at SCIC. He is responsible for conducting disciplinary hearings for inmates accused of breaking prison rules.

9.  Defendant, Robert Bitner, is chief counsel for the Pennsylvania Department of Corrections. He is responsible for

3

final review of disciplinary appeals and inmate grievances after Superintendent's institutional review.

10.   Defendant, Teresa Law, is the health care administrator and ADA coordinator for SCIC.  She is responsible for the health care needs of inmates at SCIC.

11.   Defendant, Dr. Lansky, is the head medical physician as SCIC.  He is generally responsible for ensuring compliance with the provisions of medical care to prisoners at this prison.

12.   Defendant, Robert Stodgel, is the unit manager of the sex offenders program at SCIC.  He is legally responsible for the overall operation of staff and inmates on "O" Block.

13.   Defendant, Carl Hamberger, is the unit manager of "N" block at SCIC.  He is legally responsible for the overall operations of staff and inmates on "N" block.

14.   Defendant, John Benning, is the food service manager at SCIC.  He is legally responsible for the staff and inmates whom work in the kitchens, including safety and training.

15.   Defendant, Dominik Sucic, is a food service supervisor for kitchen 2 at SCIC.  He is responsible for supervision inmates and staff alike.

16.   Defendant, Dwayne Roman, is a food service worker at SCIC.  He was the direct supervisor during incident in kitchen 2.  He is a minority.

17.   Defendant, Sergeant Bekely, was "O" block's, first shift, block sergeant.  He was responsible for inmate block workers as well as the correctional officers whom worked "O" block during his shift.

4

18. Defendant, Sergeant Lucas, was "N" Block's, first shift, block sergeant. He was responsible for control of inmates on "N" block during his shift.

19. Defendant, John Densham, was a correctional officer stationed at the educational building at SCIC. He was responsible for security at the education building.

20. Defendant, Sam Gault, was a correctional officer on "O" block at SCIC. He was the block officer on "O" block who ran the food line.

21. Defendant, Jed Minaya, is the school principal at the education building at SCIC. He is responsible for education and vocational programs as well as staff members whom work in the education building.

22. Defendant, Lizhu Zhong, is the chief librarian at SCIC. She is responsible for the overall operation of the law library and regular library.

23. Defendant, Robert Gimble, is the business manager for inmate accounts at SCIC. He is responsible for inmate accounts and authorization of legal supplies.

24. Defendant, Todd Yodleman, is a physician assistant at SCIC. He is responsible for medical treatment of inmates.

25. Each defendant is being sued individually and in their official capacities. At all times mentioned in this complaint, each defendant acted under color of state law.

Facts

26. On April 1, 1998, pursuant to a negotiated plea bargain, Plaintiff was sentenced to a two and one-half to ten

5

year prison term.  Plaintiff has been incarcerated at SCIC since April 9, 1998, his 39th birth date.

27.  Plaintiff's attorney filed a motion to modify sentence which was denied on June 10, 1998.

28.  Plaintiff requested legal assistance from Defendant Zhong to file an appeal from the denial of his petition for modification.

29.  Defendant Zhong told Plaintiff that she was not a paralegal and that there were no paralegals at SCIC.

30.  Defendants Zhong, Minaya, Kyler, Dragovich, and Horn have all denied Plaintiff staff paralegal assistance.

31.  Plaintiff has read Department of Corrections policy statement #7.6.7. and DC-ADM 007, regarding access to provided legal services.

32.  Defendants Zhong, Kyler, Dragovich and Horn have all refused to follow all of the regulations in the D.O.C. policy statement 7.6.7 and DC-ADM 007 as amended.

33.  Plaintiff was hired to work in the library in July of 1998 by Defendant Zhong.

34.  Plaintiff received no legal training nor did he observe any other inmates receive any staff paralegal training during or after his employment in the law library at SCIC.

35.  Plaintiff has documentation and witnesses to support his allegations that staff paralegal assistance has not been available at SCIC in over ten years.

36.  Plaintiff was told by Defendant Zhong that Defendant Densham did not want Plaintiff working in law library because

Plaintiff was Black and only white's were qualified to work in the law library.

37. On October 1, 1998, at 0840, Defendant Densham confiscated Plaintiff's legal petition and issued misconduct #497-278 and placed Plaintiff on pre-hearing confinement.

### Facts

38. Defendant Densham enforced an unwritten policy at SCIC that inmates could not possess legal work outside the law library nor could they assist other inmates, despite no staff paralegal.

39. On information and belief Defendant Densham received numerous grievances for targeting minority inmates -- such as myself -- and abusing them because of their race.

40. Defendant Kyler and Defendant Horn knew or, at least, should have known about Defendant Densham's confiscation of legal material from minority inmates as well as Defendant Densham's racial abuse.

41. Defendant Kyler and Defendant Horn both had the legal authority to end the racially abusive behavior of Defendant Densham.

42. On October 7, 1998, Defendant Andrede found Plaintiff guilty of misconduct #497278 and removed him from his job at the SCIC library.

43. On information and belief Defendant Andrede was aware of the abusive behavior of Defendant Densham by the number of misconducts he issued to minority inmates.

44. Based on information, Plaintiff believes that Defendant Andrede enforced policies more harsh upon minorities at

disciplinary hearings and always backs up SCIC staff's versions of events even though Defendant Andrede knew that the misconduct reports were fabricated and/or racially motivated.

45.   Misconduct #497-278 was overturned and expunged from Plaintiff's record on October 21, 1998.

46.   Defendant Zhong refused to rehire Plaintiff back at the SCIC library based on Defendant Densham's continued racist hostility.

47.   Based on information and belief, Defendant Zhong favors white inmates in her hiring practices, assignment of employment selection in direct contrast to the inmate population.  Defendant Zhong gives caucasian inmates more law library hours and free legal copies as opposed to minorities.

48.   When a prisoner files a grievance, the grievance staff calls the matter to the attention of those prison officials responsible for the grievance concerns.

49.   Plaintiff was not permitted to file a grievance in a misconduct or disciplinary situation regardless of circumstances.

50.   Plaintiff did file grievance #CAM-0212-00 against Defendant Zhong for preferential treatment of caucasian inmates at the SCIC law library.

51.   Plaintiff has suffered emotional and mental anguish in dealing with the abuse from Defendants Densham and Zhong.

52.   Defendant Minaya had the authority to stop the abuse in the education department.

53.   On January 8, 1999, Plaintiff filed a post conviction relief act (PCRA) petition in the state courts but, because he

did not receive any staff paralegal assistance, Plaintiff's petition was dismissed.

54. In March of 1999, Defendant Bekeley confiscated Plaintiff's legal papers.

55. Defendant Stodgel placed Plaintiff in solitary confinement for assisting a disabled inmate in a grievance procedure (Misconduct #143-702).

56. Defendant Andrede refused to allow Plaintiff any witnesses that would have exonerated Plaintiff of all charges. Defendant Andrede also denied Plaintiff staff assistance.

57. Plaintiff has documentation, witness' affidavits and witness testimony which would have cleared him of misconduct #143-702.

58. Defendant Andrede realized Plaintiff was innocent and called Defendant Stodgel for instructions as how to find Plaintiff guilty.

59. On information and belief, Defendants Andrede and Stodgel conspired to find Plaintiff guilty of misconduct #143-702.

60. Since June of 1999, Plaintiff has been denied access to the Pennsylvania Superior Court because Defendants refuse to provide Plaintiff with staff paralegal assistance.

61. Plaintiff's petition for modification of sentence was denied on October 5, 1999.

62. Plaintiff has filed numerous complaints requesting staff paralegal assistance and has been denied on all levels including administrative appeals.

63.    Defendant Kyler refused to interview Plaintiff or discuss with Plaintiff the staff paralegal policy despite Plaintiff's August 24, 1999 request for paralegal assistance.

64.    Defendant Dragovich told Plaintiff that he does not qualify for staff paralegal assistance.

65.    Defendant Horn, in a letter dated April 18, 2000, told Plaintiff he is very demanding but is not eligible for staff paralegal assistance.

66.    On information and belief, Defendants Horn, Kyler and Dragovich are conspiring to deny Plaintiff access to staff paralegal assistance and thereby are interfering with Plaintiff's access to the courts.

67.    Based on information and belief, Defendants Zhong and Minaya have provided Plaintiff with less than adequate and effective law library assistance where inmate law library workers are not trained by paralegals nor do inmate law library workers possess the bare essential fundamental understanding of legal ramifications to qualify helping Plaintiff.

Facts - American Disability Act (ADA)

68.    Plaintiff suffers from alcohol/drug addiction. Plaintiff has abused alcohol/drugs since the age of 13. Plaintiff has participated in and completed several drug and alcohol programs and no longer abuses drugs or alcohol.

69.    Plaintiff has a scar from a head injury and has been involved in several accidents that have created traumatic brain injury (TBI).

70.    Plaintiff was in the U.S. Navy from 1976-1982 and was

hospitalized from a military injury.    Plaintiff has sleepless nights, flashbacks, and other trauma from his Navy experiences.

71.  Plaintiff has been diagnosed with an irregular heart beat, heart murmurs as well as partially closed arteries, consistent with heart disease (Agina).

72.  Plaintiff has massive bone loss in his gums which has been diagnosed as a severe periodontal problem, which has led to further heart complications.

73.  Because of Plaintiff's mental and physical impairments that substantially limits his life activity and the history of such impairment, Plaintiff has a disability under the provisions of the Americans with Disabilities Act.

74.  Plaintiff has a disability which substantially interferes with his ability to use or understand legal material.

75.  Defendant Law has not been helpful to Plaintiff in facilitating a professional, independent, evaluation of Plaintiff's disabilities.

76.  Plaintiff has requested reasonable accommodations from SCIC, the Pennsylvania Department of Corrections, and the Pensylvania Board of Probation and Parole.

77. On August 24, 1999, Plaintiff requested staff paralegal assistance  to help him in his quest to file legal petitions.

78.  On September 30, 1999, Plaintiff requested reasonable accommodation to the sex offenders program (S.O.P.).

79.  Defendant Stodgel and Defendant Kyler both denied this request by Plaintiff.

80.  On information and belief, Defendant Stodgel and the

S.O.P. refuse to comply with all regulations of the Pennsylvania Department of Corrections policy number DC-ADM 006, regarding reasonable accommodations for inmates with disabilities and the American with Disabilities Act.

81. Based on information and belief, Defendant Kyler refused to comply with all the rules of the American with Disabilities Act.

82. On belief of information received, Defendant Law is not enforcing nor complying with the policies rendered with respect to accommodating inmates whom have disabilities.

83. On October 28, 1999, Plaintiff filed a request for reasonable accommodations to be released to the Veterans Administration (V.A.) medical center, Lebanon, Pa., for drug, alcohol and other medical treatment. Defendant Ward and the Pennsylvania Board of Probation and Parole denied this request.

Claim II - American with Disabilities Act

84. Based on information and belief, Defendant Ward and the Pennsylvania Board of Probation and Parole refused to comply with all of the rules and procedures governing the Americans with Disabilities Act and the Rehab Act.

85. Plaintiff is currently being excluded from employment, educational and vocational training programs, staff paralegal assistance, job training and dental surgery.

86. Based on information and belief, Defendant Horn and the Pennsylvania Department of Corrections have refused to follow all the rules and procedures of DC-006 and the American with Disabilities Act, Title I and Title II.

### Claim III - Fifth Amendment

87.  Defendant Horn and the Pennsylvania Department of Corrections require all inmates convicted of sex offenses to participate in a sex offenders program.

88.  If an inmate with a sex offense does not participate in a sex offenders program, he will not be recommended for release on parole prior to the expiration of his maximum sentence, and he will do his maximum sentence.

89.  However, the Pennsylvania Department of Corrections does not require inmates convicted of other crimes to participate in such programs prior to being release, e.g., robbers do not have to participate in a robber's program; persons whom commit assaults do not have to participate in assault programs; drug dealers do not have to participate in a dealer's anonymous program; etc.

90.  Defendant Ward and the Pennsylvania Board of Probation and Parole require all sex offenders to have a favorable recommendation by the Defendant Horn and the Department of Corrections before they will be released on parole.

91.  Plaintiff was required to plead guilty and admit to a sex crime prior to being accepted in the S.O.P. by Defendant Kyler.

92.  On information and belief, other inmates are not required to admit to a crime or participate in an indefinite program.

93.  Defendant Stodgel shares information gathered on a sex offender with other SCIC staff, the Pennsylvania Board of

Probation and Parole, the District Attorneys Office, Commonwealth Judges and victim advocates.

94. Based on information and belief, there is no confidentiality and information received from Plaintiff about Plaintiff's case can be obtained and used against him as any time.

95. Plaintiff is required to wear a blue tag which identifies him as a sex offender to the entire SCIC population, staff and inmates alike.

96. Plaintiff is subjected to harassment, ridicule, banishment from some programs and jobs, and threatened with bodily injury by other inmates and staff due to the nature of his crime as well as having to display the blue tag which identifies him as a sex offender.

97. Defendant Horn has not permitted a non-admittance program for sex offenders. You either have to admit to your crime or not be admitted into the program.

### Claim IV – Racial Discrimination

98. In July of 1999, Defendant Densham told Defendant Zhong not to hire Plaintiff at the SCIC library because of Plaintiff's race.

99. Plaintiff was hired at the SCIC library in July of 1999, over the protests of Defendant Densham.

100. Throughout Plaintiff's employment in the SCIC library, Defendant Densham harassed Plaintiff and Defendant Zhong for hiring Plaintiff.

101. On October 1, 1999, Defendant Densham issued Plaintiff

misconduct #497-278 in retaliation of Plaintiff being hired to work in the prison library over his objections as well as to get Plaintiff fired and removed from his job in the prison library.

102.    Based on information and belief, Defendant Densham issued most of his misconducts to minority inmates, like Plaintiff, in order to retaliate against them and have them removed from their jobs.    An examination of Defendant Densham's work records will reveal numerous complaints and grievances filed by inmates and other staff members regarding Defendant Densham's racist practices, procedures and methods.

103.    Defendant Andrede conspired with Defendant Densham in removing Plaintiff from his job by finding Plaintiff guilty of misconduct #497-278.

104.    Based on information and belief, Defendant Andrede assigns minorities more punitive segregation time than caucasian inmates in direct proportion to the prison population. Statistics will show a glaring disparity in discipline given to minority inmates, like Plaintiff, in relationship to caucasian inmates.    Defendant Andrede supports SCIC staff members racial abuse.

105.    Plaintiff appealed misconduct #497-278 and it was overturned.

106.    Defendant Zhong refused to hire Plaintiff back despite the dismissal of the misconduct which was written by Defendant Densham and overturned.    Race was the deciding factor in Defendant Zhong's decision not to rehire Plaintiff.

107.    On information and belief, Defendant Zhong favors the

hiring of caucasian inmates over minorities like Plaintiff. Statistics will show a glaring disparity in the hiring of inmates of color in the library.

108.    Plaintiff filed grievance # CAM-0212-00 against Defendant Zhong for discrimination based on race and disability.

109.    Defendant Bekely, confiscated Plaintiff's legal work in March of 1999.

110.    Defendant Bekely suspended Plaintiff from his block worker job.

111.    Plaintiff was the only minority assigned as a block worker on the S.O.P. block and was repeatedly harassed by the defendant.

112.    Plaintiff was denied promotions and raises by Defendant Bekely.

113. Based on information and belief, Defendant Bekely had a serious problem with people of color and sex offenders in general. He has suffered a nervous job related breakdown.

114.    Defendant Stodgel was made aware of Defendant Bekeley's racial abuse and had the authority to stop his behavior.

115. Plaintiff was told by Defendant Stodgel that he should stop acting like a "'field nigger' and act more like a 'house nigger'" in order to get along with and obtain favorable recommendations from staff on "O" block.

116.    Defendant Stodgel issued misconduct #143-702 to Plaintiff on June 30, 1999.

117.    Plaintiff was placed in solitary confinement by

16

Defendant Stodgel.

118. Based on information and belief, Defendant Stodgel has not sent one caucasian inmate to the restricted housing unit (RHU) for the same offense. Defendant Stodgel issued misconduct because Plaintiff is a minority.

119. Defendant Andrede refused to allow Plaintiff any witnesses to prove his innocence.

120. Defendant Andrede ruled Plaintiff was innocent of re-writing a grievance and lying to an employee.

121. Defendant Andrede called Defendant Stodgel on "O" Block to discuss Plaintiff's misconduct with the issuing officer.

122. Based on information and belief, Defendant Andrede and Defendant Stodgel conspired to find Plaintiff guilty because of his race. Statistics will show a disparity in assignment of discipline towards minorities.

123. Plaintiff filed an administrative appeal of misconduct #143-702 to Defendant Kyler.

124. Defendant Kyler agreed with Defendant Andrede's decision of guilt.

125. On information and belief, Defendant Kyler very rarely overturns a decision by Defendant Andrede and there is a racial disparity by Kyler in punishing minority inmates. Statistics will show that Plaintiff was given more punishment for a first offense than caucasian inmates.

126. Defendant Bitner supported the decision of Defendant Kyler on misconduct #143-702.

127. Based on information and belief, Defendant Bitner

supports decisions that gives minorities more punishment than caucasians.

128. Plaintiff is currently being denied employment at SCIC based on his disabilities.

129. Based on information and belief, Plaintiff is also being denied employment for reasons other than his disabilities. Statistics will show a glaring disparity in job assignments between caucasian and minority inmates.

130. Defendant Horn does know or should know about the segregation in jobs, outside clearance approval, pre-release approval, parole approval, etc.

131. Based on information and belief, Defendant Horn supports the unequal treatment of minority inmates like Plaintiff. Statistics should show that the Pennsylvania Department of Corrections policies are based on race.

132. Defendant Lucas confiscated Plaintiffs legal papers on November 8, 1999.

133. Defendant Lucas denied Plaintiff access to the law library on January 8, 2000 and would not allow Plaintiff breakfast and employment.

134. Defendant Hamberger denied Plaintiff employment and assigns cells based on race.

135. Based on information and belief, Defendant Horn and the entire Pennsylvania Department of Corrections base employment, cell assignments, medical treatment and outside job status on race.

136. Based on information and belief, Defendant Ward bases

parole release on race. Statistics will show a glaring disparity in unequal treatment between minority and caucasian parole releases.

137. Based on information and belief, Defendants Minaya, Kyler and Horn have eliminated educational programs because of race.

138. Plaintiff has suffered enormous emotional and mental anguish because of racial hatred and his numerous complaints and grievances being denied.

139. Plaintiff is indigent with less than $10 average on his inmate account for the last six months.

140. Defendant Gimble enforces a policy that doesn't exist as well as denies Plaintiff indigent legal assistance packet. Plaintiff has been below the $10 threshold for several months.

141. Based on information and belief, Defendants Gimble and Dragovich refuse to give Plaintiff an indigent legal package because of his race and disabilities.

Claim V - Medical

142. Plaintiff has continuously complained about the less than adequate medical attention he has received at SCIC.

143. Plaintiff has not received any pre-employment physicals prior to being employed in kitchen 2.

144. Plaintiff, while employed in kitchen 2, did not receive any formal training in safety, hygiene, sanitation or proper procedure for doing his job.

145. Plaintiff had prior medical ailments, i.e., pin in his left ankle, asthma, back problems, and heart complications.

146. Because of these impairments, Plaintiff was limited by medical staff as to what tasks he could perform, was not allowed to play contact sports, and was given bottom bunk status.

147. Despite Plaintiff's many medical problems, Plaintiff was forced to work in kitchen 2, at SCIC.

148. The conditions in kitchen 2 are very dangerous and hazardous with water, food grease, soap and other debris on the slick tile floor.

149. In kitchen 2, there are not enough safety mats and inmates are not issued the proper safety shoes for these slick conditions.

150. On information and belief, numerous inmates have slipped and fallen and received other injuries while working in this very dangerous kitchen.

151. In July of 1999, Plaintiff was assigned to kitchen 2 as a pots and pans washer.

152. Plaintiff received no formal instruction on the proper safety, sanitation, and hygiene procedures for scrubbing and washing pots and pans.

153. Plaintiff complained to kitchen 2 staff that the work was too physically demanding for his medical conditions.

154. In August of 1999, Defendant Lansky examined Plaintiff and minimized his physical impairments.

155. Defendant Lansky instructed kitchen 2 staff to limit Plaintiff's work assignments to no more than one hour on his feet and not to lift more than 50 pounds.

156. On information and belief, Dr. Lansky made the wrong

diagnosis regarding Plaintiff's physical conditions and should have assigned Plaintiff to a much less strenuous/physical job in the prison.

157. Defendants Benning, Sucic and Roman were informed about Plaintiff's medical conditions in August of 1999.

158. In August of 1999, Plaintiff suffered a heart attack while on "N" Block.

159. On September 3, 1999, Plaintiff asked Defendants Roman and Sucic for emergency medical attention because he was feeling sick from the medication which Plaintiff was taking and produced side effects.

160. Plaintiff was taking various medications which produced side effects.

161. Defendants Roman and Sucic knew or should have known about the medication prescribed to Plaintiff as well as Plaintiff's medical conditions.

162. Defendant Sucic denied Plaintiff emergency medical treatment on September 3, 1999 at or about 0600 at kitchen 2, SCIC.

163. Defendant Sucic told Plaintiff he should have placed a sick-call request in the box and to get back to work.

164. Defendant Sucic was aware or should have been aware that sick inmates are allowed medical treatment.

165. Plaintiff was feeling sick all morning; vomiting and diarrhea in the rest room.

166. At or about 1200 on September 3, 1999, while working in kitchen 2 at the pots and pans station, sick and exhausted,

Plaintiff slipped and fell on wet floor, twisting his left ankle, injuring his head, back and heart.

167.  Plaintiff was wet, tired and hurt as he climed up and limped out to the dining area and collasped on a stool and layed his head down.

168.  Plaintiff informed Defendant Roman about this incident and injury.

169.  Defendant Roman, again, ignored Plaintiff's request for medical treatment and left SCIC without informing the medical department about the incident.

170.  Plaintiff then informed Mr. Gilnett who, in turn, informed Defendant Benning and medical was finally contacted.

171.  Plaintiff was escorted to the ambulance at or about 1330, seven and one-half hours after he had initially reported himself as being sick.

172.  Plaintiff was examined by physician assistant Sims who prescribed an ace bandage, crutches, medication and a medical lay-in (no work in kitchen 2).

173.  On September 10, 1999, Defendant Benning fired Plaintiff from his kitchen 2 job and refused to pay Plaintiff compensation for his injury despite being given medical orders not to work.

174.  On September 13, 1999, Plaintiff was examined by orthopedist surgeon, Dr. Yuca, who ordered immediate surgery and wondered why Plaintiff was working in kitchen 2 on his feet.

175.  Dr. Yuca ordered Plaintiff to stay off his feet and to take it easy until the surgery.

176.   Plaintiff's complaints about continued pain were sometimes ignored by Defendant Lansky.

177.   Dr. Yuca stated that Plaintiff was mis-diagnosed by prison medical staff including Defendant Lansky.

178.   On September 21, 1999, Plaintiff was examined by an outside medical doctor during an EKG examination which resulted in Plaintiff being diagnosed as having an abnormal heart condition/mild stroke.

179.   Plaintiff was admitted into the SCIC hospital for a heart condition that was aggravated by the accident on September 3, 1999.

180.   Plaintiff has suffered and continues to suffer extreme pain and physical stress from the accident.

181.   Defendant Hamberger has refused to comply with the medical orders and insisted that Plaintiff stay in cell with smoker as well as stand on his ankle.

182.   On September 16, 1999, Plaintiff filed grievance CAM-0694-00 against Defendants Roman, Sucic and Benning.

183.   Defendants Benning, Sucic, and Roman all denied Plaintiff's allegations.

184.   Plaintiff filed administrative appeal to Defendant Kyler.

185.   Defendant Kyler accepted his staff's version of events and denied Plaintiff's grievance without consulting with Dr. Yuca.

186.   Defendant Bitner affirmed the decision of grievance CAM-0694-00.

187. On information and belief, Defendants Benning, Sucic, and Roman offered fabricated statements to refute Plaintiff's claim.

188. On November 16, 1999, Dr. Yuca performed surgery on Plaintiff at Holy Spirit Hospital.

189. Plaintiff was again prescribed medication, crutches and ace bandage.

190. Plaintiff was on walking cane per doctor's orders until April 9, 2000, and now suffers extreme pain, mental and emotional anguish.

191. Plaintiff filed grievance CAM-0267-00 against medical staff for inadequate treatment, denial of medical treatment and for being over charged for medical services.

192. Defendant Teresa Law has shown a disregard for Plaintiff's medical conditions.

193. Plaintiff has been denied employment and compensation for his injuries.

194. Plaintiff should be compensated at the rate of $50 per month from September 3, 1999 for his inmate pay.

195. Plaintiff is indigent and needs legal materials; 200 sheets of typing paper, $10 in photo copies, two pens, two pencils, 10 sheets of carbon paper, and a legal phone call. Plaintiff receives idle pay which is inadequate to meet these needs.

196. Plaintiff filed grievance CAM-0187-00 against Defendant Hamberger for denying Plaintiff a legal phone call.

197. Plaintiff filed grievance CAM-0178-00 against Business

Accountant  Manager  Gimble  for  refusing  to authorize  legal
supplies for Plaintiff.

198.  Plaintiff continues to suffer from Defendants abusive
policies.

199.  On April 18, 2000, Defendant Horn denied all of the
Plaintiff's claims.

200.  On information and belief the policy and practice of
the  Pennsylvania Department of Corrections  is  to  deny  any
allegations an inmate makes, the staff's version of events is
always accepted.  There is no independent impartial investigative
agency that objectively looks into prison abuse of inmates like
Plaintiff.  The Pennsylvania Department of Corrections can not
investigate itself in a fair, impartial and just manner.

Claim VI - Megans Law

201.  Plaintiff is required, by Defendants Kyler, Horn, and
Ward, to register with the Pennsylvania State police prior to his
release from prison.

202.  Other inmates convicted of crimes -- other than sex
crimes  -- are not required to register with the Pennsylvania
State police.

203.  Drug dealers, robbers, assaulters, etc., are not
required to register with the Pennsylvania State police prior to
their release.

204.  To require Plaintiff and other inmates to register
with the Pennsylvania State police just because they have been
convicted of a crime involving sex as opposed to a crime
involving robbery, assault, drug dealing, etc. is violative of

the Plaintiff's right to equal protection and not be discriminated against. A crime is a crime. It should not matter whether you are convicted of a robbery, assault, sex offense or whatever. A crime is a crime and, equal protection should require that all criminals register with the Pennsylvania State police regardless of their crime or sex offenders should not be isolated, picked upon, thereby being the only criminals whom have to register.

205. If Plaintiff does not register with the State police, he will not be released from prison. This is not so for other inmates charged with other crimes outside of sex offenses.

206. Based on information and belief, Plaintiff feels that Meagan's Law registration is unnecessary because he will be on parole and that is enough protection for any societal interest.

Legal Claims for Relief

207. Plaintiff has been deprived of his right to access to the courts, staff paralegal assistance, the right of inmates to provide legal assistance to each other. Plaintiff has suffered actual injury by having his legal petitions, grievances and complaints denied in violation of his fourteenth amendment to due process and his eighth amendment against cruel and unusual punishment.

208(A). The actions of the Defendants Zhong, Minaya, Densham, Kyler, Dragovich, Bekely, Lucas, Bitner, Andrede, and Horn as stated in ¶¶ 26-67, 74-76, 101-104, 108-109, 116-127, 132-133, and 191-193 violated Plaintiff's constitutional right to adequate law library, legal assistance and access to the courts.

209(B). Defendants have an affirmative obligation to provide inmates with the necessary materials and assistance needed to prepare petitions and should not bar inmates from helping each other in violation of Plaintiff's due process, fourteenth amendment rights.

209(C). Plaintiff is constitutionally entitled to some form of paralegal assistance.

### Claims for Relief - ADA

210. Plaintiff has been excluded from participation and denied of the services, programs and activities of a public entity, in violation of the Americans with Disabilities Act, Title I and II, as set forth in ¶¶76-79 and 83-86. Plaintiff has impairments which qualify him as a disabled inmate as set forth in ¶¶68-74. Plaintiff has been discriminated against because of his disabilities.

210(A). The actions of Defendants Horn, Benning, Lansky, Kyler, Stodgel, Zhong, Dragovich, Andrede, Ward and law as set forth in ¶¶68-97, 116-121, 123-124, 128-131, and 169 violated Plaintiff's protected liberty interest arising from the due process clause and equal protection under the fourteenth Amendment. The defendant's listed above violated Plaintiff's rights under the ADA, § 504 of the Rehabilitation Act, and Plaintiff's eighth Amendment right.

211. Plaintiff has been deprived of his constitutional right to equal protection which is guaranteed by the fourteenth Amendment of the United States constitution. Plaintiff has been discriminated against because of his race and subjected to

discriminatory policies by the Defendants during his incarceration.

211(A). The actions of the Defendants Horn, Kyler, Ward, Stodgel, Andrede, Bekely, Lucas, Zhong, Hamberger, Gault, Bitner, Densham and Benning as set forth in ¶¶98-138, 167, 192, 195-196 subjected Plaintiff to "invidious discrimination" and prison officials should bear the burden of proving their policies do not violate Plaintiff's due process rights under the fourteenth Amendment and eighth Amendment's clause against cruel and unusual punishment.

212. Plaintiff has been forced to give incriminating statements that were not given freely or voluntarily with the threat of compulsion of doing his maximum sentence which violates Plaintiff's fifth Amendment right.

212(A). The actions of Defendants Stodgel, Kyler, Horn, and Ward as set forth in ¶¶88-91, violated Plaintiff's unqualified right to choose whether or not to give self-incriminating statements which can and will be used against him throughout his incarceration and parole.

213. Plaintiff has been deprived of his right to safe and sanitary work conditions. Plaintiff has suffered a personal injury and denied access to adequate medical care, medical negligence, and deliberate indifference which all demonstrate an eighth Amendment violation.

213(A). The actions of the Defendants Lansky, Benning, Sucic, Roman, Kyler, Bitner, Yodleman, Law, and Horn as set forth in ¶¶138-196 showed a callous disregard and deliberate

indifference to Plaintiff's safety and medical conditions which resulted in Plaintiff sustaining a serious personal injury. The above-listed Defendants violated Plaintiff's eighth Amendment right of the United States constitution which protects against cruel and unusual punishment.

214. Plaintiff is forced to register with the Pennsylvania State police while other persons convicted of crimes are not required to register.

214(A). Plaintiff's right to equal protection and due process of law are being violated by requiring him to register under Megan's Law as set forth in ¶¶197-200.

215. Defendants' threats to punish Plaintiff for taking legal action and their threats to punish prisoners who submit affidavits on behalf of Plaintiff violates Plaintiff's right of meaningful access to the courts which is guaranteed by the due process clause of the fourteenth Amendment of the United States constitution.

216. Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs described herein. Plaintiff has been and will continue to be irreparably injured by the conduct of the Defendants unless this Court grants declaratory judgement, injunctive relief, and a temporary restraining order.

WHEREFORE, Plaintiff respectfully prays that this Honorable Court enter judgements granting the following merciful relief:

_Brian Daugher_

_PLAINTIFF_

## RELIEF REQUESTED

WHEREFORE, plaintiff request that the court grant the following relief:

A. Issue a Declaratory Judgement that all the defendants' acts,
   policies, and practices described herein violate planitiffs'
   rights under the U.S. Constitution and American With Disabilities Act.

B. Issue a Declaratory Judgement specificly stating the following:

   1. The denial of paralegal assistance,adequate law library,confiscation
      of legal material, and violation of Dept. of Correction policies by
      defendants Horn,Kyler,Minaya,Zhong,Dempshan,Lucas,Andrede,Bekely and
      Stodgel violated plaintiff's constitutional rights of access to the
      courts and right to be free from cruel and unusal punishment under
      the Eighth Amendment and due process under the 14th Amendment.

   2. The physical,mental, and emotional abuse of the plaintiff by defendants
      Kyler,Benning,Sucic,Roman,Lansky,Andrede,Stodgel and Horn violated
      plaintiff's rights under the 8th Amendment of the constitution and
      constuted a Tort Claim under state and federal law.

   3. Defendant Andrede actions in conducting the plaintiff's disciplinary
      hearing, and defendant Kyler and Bitner action in substaining misconducts,
      violated the plaintiff's Due Process Clause of the 14th Amendment.

   4. Defendant Stodgel and Andrede engaged in a racial conspiritry to find
      the plaintiff guilty of misconduct#143702, subjected plaintiff to cruel
      and unusal punishment under the eighth amendment and equal protection
      under the 14th amendment.

   5. That defendant Dempshan practiced racial discrimination and defendants
      Horn,Kyler,Minaya failed to curb the abuse of plaintiff violated the
      8th and 14th amendment of the constitution.

   6. Defenants Zhong,Minaya,Horn,Ward,Stodgel,Gualt,Bekely,Kyler,Hamberger,
      Lucas,Andrede discriminated against plaintiff which violated the Equal
      Protection Clause of the 14th Amendment of the Constitution.

## RELIEF REQUESTED

7.    The denial of reasonable accommodations by defendants Horn,Ward,Kyler, Stodgel,Zhong,Gualt,MinayaDragovich Violated plaintiff's rights under the American With Disabilities Act and Sect. 504 of the Rehab Act.

8.    The forced self-incrimination and provided adverse testimony by defendants Stodgel,Kyler,Horn,Ward violated plaintiff's 5th Amendment rights.

9.    The failure of defendants Horn,Kyler,Benning,Suicic and Roman for not providing food service training, safety and hygiene training,safe working site, and forcing plaintiff to work while sick and disabled violated the plaintiff's 8th amendment rights showed deliberate indifference to his medical condistion.

10.   That defendant Ward discriminted against plaintiff because he has a disability,is black, and is convicted of a sex offense in not allowing him to attend a federal Veteran Administrations program for treatment violated the Equal Protection Clause of the 14th Amendment, the American with Disabilities Act and Sect. 504 of the Rehab Act.

## RELIEF REQUESTED

11. The actions of defendants lansky,law,lophoe inn failing to provide adequate mediccal care and misdignosiong plaintiff's medical care violated his 8th amendment rights.

12. The failure of defendant Roman,Sucic, Benning to change plaintiff's job status,sanitary work site,provide traing violated the 8th amendment and proves deliberate indifferencce on his medical condition.

B.  Issue a preliminary and permanant injunction which:

1. Requires defendant Dragovich to provide plaintiff with an legal package consisting of 200 pices of typing paper,2 pens & pencils, 10 carbon paper, $10 in legal copies, and $10 inlegal Mai

2. Require defendant Horn to provide paralegal assistance toplaintiff so he may file an amended 1983 civil petition and its attachments, help plaintiff gain access to the Pa. Superior Court or file a Hebas Corpus Petition.

3. Require defendant Horn to hire a full time paralegal at SCIC to assist inmates gain acccess to state and federal court

4. Require defendant Dragovich,Andrede, and Horn to remove misconduct # 143702 from his iinmate file and plaintiff's reccord.

5. Require defendant Horn to proviede the following medical care: a. Hearts Stress test and b. Denatal Surgery(Periodontal correctio

6. Require defendant Horn to compensate plaintiff for his injury for his inmate pay of $50 a monthe since Sept 3, 1999.

c.  Award compensatory damages of $25,000.00 jointly and severally agains all defendants for the physical,mental,emotional and spiritual injuri plaintiff has sustained as a result of his unconstitutional suffering

E.   Award punitive damages in the amount of $25,000 jointly and severally against each defendant.

F.   Grant such other relief that Plaintiff may be entitled.

G.   Trial by jury on all issues triable by jury.

H.   Plaintiff's cost of suit, any and all legal fees.

Respectfully submitted,

5-25-2000
_____
Date

_____
Signature

SWORN AND SUBSCRIBED BEFORE ME THIS

_____ day of _____, 2000.

_____
Notary Public

a. **Describe** *the administrative procedures available to resolve the issues raised in this complaint:*

**Type** *of procedure. (grievance, disciplinary review, etc.)*

Grievances, Office of Professional Responsibility, Inmate Displine

**Authority** *for procedure. (DC-ADM, inmate handbook, etc.)*

DC-Adm 804, Consolidated Inmate Grievance System, and DC-ADM 801

**Formal** *or informal procedure.* Formal

*Who conducts the* **initial** *review?* Facility/RegionalManager who forwards
Inmate Grievance to the appropriate Grievance Officer for intial revi

*What additional review and appeals are available?* Inmates may appeal decisio
of the grievance officer to the prison Superintendant and Cheif Coun

who has the final appeal authority.

b. **Describe** *the administrative procedures you followed to resolve the issues raised in this complaint before filing this complaint:*

*On what date did you request* **initial** *review?* Sept 16, 1999—CAM-0694-99

*What action did you ask prison authorities to take?* Reported violations of
DC-Adm 610 procedures, removal from job, personal injury, and dangero
work site.

*What response did you receive to your request?* Defendants denied all my
allegations.

*What* **further** *review did you seek and on what dates did you file the requests?* In Oct 99, I filed an appeal to defendant Kyler.

The Superintendent denied my appeal.

*What* **responses** *did you receive to your requests for further review?*

ON Oct 22, 1999 and Nov 9, 1999 defendant Kyler and defendant
dismissed my grievance respectively.

c. **If** *you* **did not follow** *each step of the administrative procedures available to resolve the issues raised in this complaint explain why.*

Planifitt has followed all the steps in Pa.Dept of Corrections,Policy
Statement DC-Adm 804, and exhusted all of his available remedies in
compliance with the Prisoner Litigation Reform Act. He has not filed
civil petition in federal or state court before.